United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEENA MARIE LE,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNLAN CORPORATION, ET AL,<br><br>    Defendants.                                  / | No. C 13-00707 CRB<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING MOTION FOR FEES** |

Two motions are pending in this case. In the first, Defendants move for judgment on the pleadings, arguing that Plaintiff's remaining claims fail for the same reason as those at issue in the anti-SLAPP motion the Court granted in October 2013. See generally Mot. for JOP (dkt. 55); Order (dkt. 50). In the second, Defendants move for $47,031 in fees in connection with their successful anti-SLAPP motion. See generally Fees Mot. (dkt. 53). Upon close consideration of the parties' papers, and their arguments at the motion hearing, the Court GRANTS both motions.

**I.    BACKGROUND**

Plaintiff Teena Marie Le alleges that she took out a loan from CashCall, Inc. in August 2008. Compl. (dkt. 1) ¶ 17. CashCall sold her loan to Sunlan Corp., who transferred it to Sunlan-062804 LLC. Id. ¶¶ 21-22. Defendants (the Sunlan entities, Sunlan employee Lee Joseph Ross, Kenneth John Miele, and the Law Office of Kenosian & Miele, LLP) then brought suit against Plaintiff in Alameda County, seeking to collect $3,681.47 in damages.

1  Id. ¶ 23. Le defaulted, but Defendants stipulated to set aside the default, and subsequently
2  dismissed the action against Plaintiff without prejudice. Id. ¶¶ 36-37.
3      Plaintiff filed this lawsuit in February 2013, alleging malicious prosecution, as well as
4  claims under the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair
5  Debt Collection Practices Act ("RFDCPA"), and California Finance Lender Law. See
6  generally id. Plaintiff's theory of liability is that CashCall violated Financial Code section
7  22340[1] when it sold her debt to Sunlan Corp., which voided the debt. See id. ¶ 48 ("As a
8  result of CashCall, Inc.'s willful violation of Cal. Financial Code § 22340(a), the debt is void
9  and noncollectable, pursuant to Cal. Financial Code § 22750(b)."). Plaintiff alleges that
10 Defendants then tried to collect the debt, "an action that cannot lawfully be taken." Id. ¶ 51.
11     Defendants moved to strike the RFDCPA and malicious prosecution claims from the
12 Complaint, arguing that this is a SLAPP suit and that those two claims arise out of
13 Defendants' protected activity of filing suit against Plaintiff. See Mot. to Strike (dkt. 20)
14 (citing Cal. Code Civ. P. § 425.16(b)(1)). The Court granted that motion, holding that
15 Plaintiff did not have a probability of prevailing on those claims, because section 22340
16 "applies strictly to real estate backed loans" and therefore "simply does not apply to
17 Plaintiff's loan, which was not backed by real estate." Order at 6-7. The Court further held
18 that section 22340 does not prohibit any conduct, but rather grants finance companies
19 without real estate broker licenses permission to sell real estate backed loans to institutional
20 investors. Id. at 6.
21     Defendants now move for judgment on the pleadings on the remaining claims, and for
22 fees in connection with the anti-SLAPP motion.
23 //

---

[1] Section 22340(a) provides that

> A licensee may sell promissory notes evidencing the obligation to repay loans made by the licensee pursuant to this division or evidencing the obligation to repay loans purchased from and made by another licensee pursuant to this division to institutional investors, and may make agreements with institutional investors for the collection of payments or the performance of services with respect to those notes.

Cal. Fin. Code § 22340.

2

## II. Motion for Judgment on the Pleadings

### A. Legal Standard

"Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). When a party invokes Rule 12(c) to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6). Wood v. County of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995). "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved . . . .'" McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

### B. Discussion

Defendants' motion for judgment on the pleadings argues simply that Plaintiff's remaining claims fail for the same reason the Court struck her two other claims: both "depend on the premise that CashCall violated Financial Code section 22340 when it sold her bad debt to Sunlan Corporation. This Court has already decided that premise is false." Mot for JOP at 4. That argument is correct. The Court held unambiguously that "§ 22340 applies strictly to real estate backed loans," that Plaintiff's interpretation of § 22340 was "strained" and supported by "no authority," and that "[e]ven if that section prohibits any conduct – an interpretation that is not supported by the plain language – it simply does not apply to Plaintiff's loan, which was not backed by real estate." Order at 6-7. Based on that holding, the Court found that Plaintiff could not demonstrate a probability of prevailing. Id. at 7.

Plaintiff does not deny that her remaining claims rely on the same interpretation of section 22340 that the Court has already rejected. See Opp'n to Mot. for JOP (dkt. 58) at 14 (arguing that because Defendants willfully violated section 22340(a), the debt is void under section 22750(b), and therefore Defendants' attempts to collect the debt misrepresented the

debt's legal status, which violates the FDCPA). She opposes Defendants' motion by arguing, instead, that the Court's interpretation of section 22340 is wrong. See id. at 6-11.

Specifically, Plaintiff argues that the Court need not look to the statute's legislative history, which Defendants discuss at length, see Mot. for JOP at 5, and which the Court noted, see Order at 6, but should look to the law's "plain language," Opp'n to Mot. for JOP at 4. There are two problems with this argument–aside from the not insignificant problem that the Court has already decided this question. See generally Order; see also Angeles v. U.S. Airways, Inc., No. 12-05860, 2013 WL 3243905, at *1 (N.D. Cal. Jun. 26, 2013) (applying law of the case doctrine). First, the plain language of the law does not support Plaintiff's interpretation, which requires reading the words "may sell promissory notes" in the statute as "may only sell promissory notes," thus prohibiting all other conduct. See Opp'n to Mot. for JOP at 10. Second, Plaintiff, too, purports to rely on legislative history. See id. at 9 ("Clearly it was the Legislature's intent . . .").[2]

The Court will not revisit its holding that section 22340 does not apply to the loan at issue. Because section 22340 does not apply, it was not violated, and the remaining claims–premised on the violation of 22340–fail. The Court therefore GRANTS the motion for judgment on the pleadings.

### III. Motion for Attorneys' Fees

#### A. Legal Standard

The "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001). "[A] court assessing attorney fees begins

---

[2] At the motion hearing, Plaintiff argued for the first time that California Financial Code section 22340.1 supports her interpretation of section 22340, because it is "identical" to section 22340 except that it addresses "real estate loans," which would suggest that section 22340 does not address real estate loans. The Court allowed Defendants to file a supplemental brief responding to this new argument, and Defendants did so. See Supp. Br. (dkt. 67). As Defendants point out, section 22340.1 does not address "real estate loans," but "federally related mortgage loans," a subset of real estate loans. See Supp Br. at 1-2. That distinction is important because it means that the two sections are in fact complementary. Moreover, Plaintiff's argument about section 22340.1 has nothing to do with the Court's holding that section 22340 does not prohibit any conduct. See Order at 6.

4

with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." Id. at 1131-32. An award of fees and costs in an anti-SLAPP case must be reasonable, and courts have broad discretion in determining what is reasonable. See Metabolife Intern., Inc. v. Wornick, 213 F. Supp. 2d 1220, 1221-22 (S.D. Cal. 2002). The degree of success obtained is the most critical factor in determining a reasonable fee. Farrar v. Hobby, 506 U.S. 103, 114 (1992).

**B.  Discussion**

Defendants seek a total of $47,031 in connection with their anti-SLAPP motion. See Fees Mot. at 1. Plaintiff argues that this sum results from an unreasonable amount of time billed (77.1 hours), and an unreasonably high billing rate ($610/hr.). See Opp'n to Fees Mot. (dkt. 59) at 2.

**1.  Hours Billed**

To determine the reasonable number of hours billed, courts are to evaluate the time expended, the nature of and need for the services performed, and the relevant fee records. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). Defendants submit evidence that they were represented by two partners from Katten Muchin Rosenman LLP, who spent 65.1 hours researching the applicable substantive law and legislative history of Plaintiff's claims, drafting the anti-SLAPP motion and its supporting declarations, analyzing Plaintiff's opposition to the anti-SLAPP motion, drafting a reply in support of the anti-SLAPP motion, analyzing Plaintiff's separate motion to take discovery to oppose the anti-SLAPP motion, drafting an opposition to Plaintiff's motion, preparing for hearings on both motions, and participating in both hearings. See Fees Mot. at 6-7; Korman Decl. (dkt. 53-1) ¶¶ 8-10 (describing work done), Ex. A (billing invoices). Defendants further expected to spend 12 hours in connection with the fees motion. See Fees Mot. at 7; Korman Decl. ¶ 11 (describing anticipated work on fees issue).[3] This yields a total of 77.1 hours. Defendants argue

---

[3] Defendants' counsel asserted at the motion hearing that he had ultimately spent more than 12 hours on the fees motion.

5

convincingly that the time spent was necessary because Plaintiff's theory that Sunlan could not legally collect the debt it had purchased "threatened to unravel Sunlan's business model," and because, in prevailing on the anti-SLAPP motion, Defendants essentially disposed of all of Plaintiff's claims.

Plaintiff's arguments that the time spent was excessive are not persuasive.

First, Plaintiff argues that because only one of Defendants' lawyers, Gregory Korman, submitted a declaration, Defendants should not be able to recover the other lawyer's (Ryan Larsen's) time. Opp'n to Fees Mot. at 3-4. But Defendants also submitted billing records reflecting both attorneys' time, which are not hearsay but business records of the Katten firm. See Red. R. Evid. 803(6); Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1023 (9th Cir. 2001). Korman's declaration demonstrated personal knowledge of how Katten generates such billing records. See Korman Decl. ¶ 8.

Next, Plaintiff objects to Defendants' use of two Katten partners to do work "that one could have accomplished." Opp'n to Fees Mot. at 4-6. But Plaintiff does not point to any specific examples from the billing of unnecessary or duplicative work. Nor does Plaintiff distinguish the two recent cases Defendants cite in which courts from this district approved 66.5 hours and 71.5 hours of work on anti-SLAPP motions. See Fees Mot. at 7 (citing Smith v. Payne, No. 12-01732, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15, 2013); Plevin v. City & Cnty. of San Francisco, No. 11-2359, 2013 WL 2153660, at *8 (N.D. Cal. May 16, 2013)). Moreover, it was not unreasonable to staff two partners on what was in fact a "bet-the-company case for Defendants." See Reply re Fees Mot. (dkt. 62) at 2. Plaintiff's contention that the anti-SLAPP motion was "of dubious utility" and struck "only two of plaintiff's claims" is particularly misguided, given that the anti-SLAPP motion could not have attacked the federal FDCPA claim, see Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010)

6

1 (anti-SLAPP statute does not apply to federal causes of action), and that the Court's order
2 eviscerated the theory upon which the remaining claims(s) was based.[4]

3 Plaintiff argues, finally, that the 11.3 hours of time Katten spent related to the
4 discovery motion should be disallowed. Opp'n to Fees Mot. at 6. This argument fails
5 because work that is inextricably intertwined with an anti-SLAPP motion is also
6 compensable. See Graham-Sult v. Clainos, No. 10-4877, 2012 WL 994754, at *4 (N.D. Cal.
7 Mar. 23, 2012) (granting defendants' fee requests for work performed directly on anti-
8 SLAPP motion, in addition to "inextricably intertwined" work on indemnity and case
9 management issues), affirmed in part and vacated in part by Graham-Sult v. Clainos, No. 11-
10 16779, 12-15892, 2013 WL 6820452 (9th Cir. Dec. 27, 2013) ("district court did not abuse
11 its discretion by awarding fees for these activities"); Henry v. Bank of Am. Corp., No. 09-
12 628, 2010 WL 3324890, at *3-4 (N.D. Cal. Aug. 23, 2010) (including in anti-SLAPP fee
13 award time spent litigating "discovery initiated by the opposing party . . . directly related to
14 the motion to strike"). The very purpose of the discovery motion was "to conduct discovery
15 or otherwise obtain and present facts essential to justify her opposition to Defendants'
16 Special Motion to Strike." Discovery Mot. (dkt. 31) at 1. The work opposing that motion
17 was inextricably intertwined with the work on the anti-SLAPP motion itself.

18 In light of the above, the 77.1 hours billed were reasonable.

### 2. Rate

20 To determine the reasonable hourly rate, courts are to look to the rates customarily
21 charged for work of the type performed in the relevant legal community, the reputation and
22 experience of the attorneys who performed the services, the quality of counsel's services on
23 behalf of their client, the complexity of the work performed, and the results achieved.
24 Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546, 556-57
25 (1986). Defendants submit evidence that Korman and Larsen are both partners in the Los
26 Angeles office of Katten who have each been practicing for over ten years. See Fees Mot. at

---

[4] Plaintiff further complains that Defendants' counsel had no experience in anti-SLAPP motions and that Defendants' counsel are therefore "attempting to shift the cost of educating its attorneys on the anti-SLAPP laws to plaintiff." Opp'n to Fees Mot. at 5. There is no evidence to support this assertion.

7

7; Korman Decl. ¶¶ 3, 6. Each bill their time at $610 per hour. See Fees Mot. at 7, Korman Decl. ¶4, ¶ 7.

Plaintiff's objections to this rate as "outrageous and unsupported," Opp'n to Fees Mot. at 6, are unpersuasive.

Plaintiff objects to the lack of evidence of other fee awards to the firm's attorneys. Id. While Defendants did not provide such evidence, they did provide case law finding rates of $650-$730 per hour reasonable for very experienced counsel in San Francisco, rates of $545, $625, and $900 per hour reasonable in the Central District, and rates of up to $650 and $675 per hour reasonable in the Eastern District. See Fees Mot. at 8. They also point to the PricewaterhouseCoopers LLP 2013 Revenue Management Summary Report, stating that the median standard billing rates for non-equity partners in AmLaw 100 firms are between $590 and $750 per hour, with an average of $665 per hour. See Korman Decl. ¶ 5. Although Plaintiff complains that the "relevant measure is the prevailing rate in the San Francisco Bay Area . . . and defendants have not provided any evidence of that rate," Opp'n to Fees Mot., Defendants do cite to Rosenfeld v. U.S. Dep't of Justice, 904 F. Sup. 2d 988, 1001-02 (N.D. Cal. 2012), the case with the $650-$730 per hour rate. See Fees Mot. at 8. And Korman's Declaration asserts that $610 is "within the reasonable range of standard billing rates charged by other AmLaw 100 firms practicing in . . . San Francisco." Korman Decl. ¶ 4.

Plaintiff also objects that "defendants are silent as to what the actual billing rate is for the two partners who worked it," speculating that the clients did not actually pay for the work but that their insurer did. Opp'n to Fees Mot. at 7. Defendants answer in their Reply that it is not true that an insurer is paying their fee, Reply re Fees Mot. (dkt. 62) at 7, but that even if it were, that is legally irrelevant, id. (citing California Court of Appeal authority rejecting insurer argument). Korman's Declaration states, moreover, "I regularly bill, and Katten's clients regularly pay, this rate [$610] for my time." Korman Decl. ¶ 4. Defendants' motion

8

also explicitly states that "Defendants paid market rates to obtain that result, and they should get that money back." Fees Mot. at 8.[5]

The evidence and case law support a finding that the $610 per hour rate is reasonable.

### 3. Conclusion as to Requested Award

Because the hours billed and the hourly rate are both reasonable, the Court GRANTS Defendants fees of **$47,031.**

The Court notes that Plaintiff requests a stay of the ruling on fees while an appeal of the anti-SLAPP motion is pending. See Opp'n to Fees Mot. at 8. But Plaintiff provides no authority for that request aside from Federal Rule of Appellate Procedure 8. See id. As Defendants point out, Plaintiff has not appealed the anti-SLAPP order, and so Rule 8 does not apply. See Reply at 9. Moreover, Judge Ryu recently denied a losing anti-SLAPP plaintiff's request to stay a fee motion while appeal was pending, explaining that a district court has the power to decide fees during an appeal and that doing so promotes judicial efficiency. See Smith, 2013 WL 1615850, at *2. The same reasoning applies here, where appeal has not yet been taken.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS both motions.

**IT IS SO ORDERED.**

Dated: January 27, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[5] Defendants' counsel again asserted at the hearing that Defendants had paid their counsel for this work.